UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---

JOHN J. ARMANO, JR.,

        Plaintiff,

    v.

MICHELE MARTIN, ANGELA
DONATO, NICHOLAS FAZZIO, JOHN
ROGALE, ALBERT FRATTALI, and
SEAN LONGFELLOW,

        Defendants.

---

Civil No. 15-2634 (NLH/KMW)

**OPINION**

**APPEARANCES**:

LOUIS GIANSANTE
GIANSANTE & ASSOC., LLC
23 E. MAIN STREET
MOORESTOWN, NJ 08057
    On behalf of plaintiff

ERIC J. RISO
PLATT & RISO, P.C.
40 BERLIN AVENUE
STRATFORD, NJ 08084
    On behalf of defendants Michele Martin, Angela Donato, John
    Rogale, Albert Frattali, and Sean Longfellow

JOHN C. GRADY
WARDELL CRAIG ANNIN & BAXTER LLP
41 GROVE STREET
HADDONFIELD, NJ 08033
    On behalf of defendant Nicholas Fazzio

**HILLMAN, District Judge**

    This matter concerns claims by a township's former

solicitor regarding his allegedly improper termination.

Presently before the Court are the motions of defendants to

dismiss and for summary judgment.  Plaintiff has cross-moved for

summary judgment on two of his claims.[1]  For the reasons expressed below, defendants' motions will granted, and plaintiff's motion will be denied.

**BACKGROUND**

Plaintiff, John J. Armano, Jr., Esq., a New Jersey licensed attorney, was appointed by the Mayor of the Township of Washington, and confirmed unanimously by the Township's Council, as the Solicitor/Director of the Department of Law of Washington Township beginning on January 2, 2013.  Plaintiff's contract ran until December 31, 2016.  On January 3, 2015, however, the Township Council adopted Resolution No. 23-2015, which authorized the filing of charges against plaintiff seeking his removal, pursuant to N.J.S.A. 40:69A-36 & -37 and Section 2-398 of the Township Code.  The Resolution arose out of plaintiff's law firm partner's representation of an individual who sued Township Council members in New Jersey Superior Court in March 2014.  The charges filed against plaintiff asserted:

> CHARGE: CONFLICT OF INTEREST - KNOWINGLY ENGAGING IN ACTION WHICH WAS CONTRARY TO THE INTERESTS OF CURRENT CLIENTS, DULY ELECTED REPRESENTATIVES OF CLIENTS, AND INDIVIDUALS WHO ARE NOW REPRESENTATIVES OF CLIENTS.

> Specifications:

>> (1)  At all times relevant hereto, the firm of Trimble

---

[1] Plaintiff did not formally file a cross-motion in compliance with Local Civil Rules 7.1(h) and 56.1.  Nevertheless, the Court will consider all of plaintiff's arguments presented in his briefs.

& Armano is and was a law firm consisting of John W. Trimble and John Armano. Said firm has been appointed as the Solicitor for the Township of Washington and remains so at all times relevant hereto.

(2)  On March 28, 2014, a litigation was filed in the Superior Court of New Jersey, Law Division, Gloucester County, Docket Number GLO-L-472-14 captioned John Daly, an individual and on behalf of other Democrats seeking an Open Primary Election vs. Frank Cianci, Chairman of the Washington Township Democratic Executive Committee, Angela Donato, Sean Longfellow, Albert Frattali, the Washington Township Democratic Executive Committee, Fred Madden, Chairman of the Gloucester County Democratic Executive Committee and James N. Hogan, Gloucester County Clerk.

(3)  At the time that the litigation was initiated, by virtue of their position on Township Council for the Township of Washington, both Michelle Martin and Scott Newmann, were part of the Washington Township Democratic Executive Committee.

(4)  Angela Donato, Sean Longfellow and Albert Frattali were candidates that were duly nominated by the Washington Township Executive Committee to run as the endorsed candidates of said Committee for the three (3) open council seats for the 2014 primary election.

(5)  The litigation sought to invalidate the endorsement by the Washington Township Executive Committee, of which sitting Council members Martin and Newmann are members, of candidates Donato, Longfellow and Frattali. Said litigation also sought an Order requiring an open primary which would have been against the interests of not only the Democratic Committee, but also individually of Angela Donato, Sean Longfellow and Albert Frattali. The litigation also sought an Order requiring Fred Madden as Chairman of the Gloucester County Democratic Committee to place all the Washington Township Democratic candidates for council evenly on the ballot which also would have been against the interests of the Angela Donato, Sean Longfellow and Albert Frattali.  The Complaint also sought an Order requiring the same of James Hogan, Gloucester County Clerk.  There were other claims for relief with regard the Democratic Committee.  Lastly, the Order sought the payment of legal fees and costs to the firm of Trimble &

3

Armano from all named Defendants.

(6) When the firm of Trimble & Armano appeared in court before the Hon. Christine Allen-Jackson, J.S.C., seated as the representative of the Washington Township Democratic Committee was Councilwoman Michelle Martin which took place on April 2, 2014.

(7) On April 9, 2014, the firm of Trimble & Armano voluntarily dismissed said lawsuit.

(8) At the time of the primary election, Donato, Longfellow and Frattali won the primary and ran as the Democratic slate of candidates in the November election. At the time of that election, Donato and Longfellow won the general election and are now sworn sitting council persons for the Township of Washington as are Michelle Martin and Scott Newmann.

(9) The continuation of the firm of Trimble & Armano or either of the named partners in said firm in serving as Solicitor for the Township of Washington creates a genuine conflict of interest. The firm Trimble & Armano recently represented parties which sued Sean Longfellow and Angela Donato personally, sought relief against them and sought a payment of counsel fees and costs. The firm of Trimble & Armano also brought suit against the Washington Township Democratic Committee, on which Michelle Martin and Scott Newmann current council members of the Township of Washington, sit on the Committee by vitlue of their position as elected public officials and Democrats. Michelle Martin was the actual party representative of the Washington Township Democratic Committee during legal proceedings before the Superior Court of New Jersey.

(10) The continued legal representation of the Township of Washington by the firm of Trimble & Armano as Solicitor/Director of the Department of Law, is in violation of New Jersey Rule Professional Conduct 1.7, 1.9, 1.10 and 1.11. The firm's continued representation of the Township of Washington, also causes a fundamental break down in the attorney-client relationship between the individuals that he has sued personally and through the litigation against the Washington Township Democratic

Committee since sitting current Council members were on
said Committee.

(Docket No. 31-3.)

After having received notice of the charges,[2] plaintiff

refuted the charges in writing.  In his response, plaintiff

presented a report from a legal ethics expert who determined

that Mr. Trimble's representation in the Daly case did not

create a conflict of interest in violation of the New Jersey

Rules of Professional Conduct with regard to plaintiff's

position as Washington Township's Solicitor.  A hearing on the

charges was held on January 21, 2015.  Plaintiff did not appear

at the hearing, but prior to the hearing, Council members had

been provided with plaintiff's response to the charges.  The

Council voted 4-1 to remove plaintiff as Township Solicitor, and

adopted Resolution 57-2015 to effect his removal.  The

Resolution provided a recitation of the procedural history

leading up to the hearing, the presentation of evidence to the

Council by the special counsel appointed to prosecute the

---

[2] Plaintiff properly received a "Rice notice."  See McGee v. Twp.
of E. Amwell, 7 A.3d 785, 794 (N.J. Super. App. Div. 2010)
(explaining that under the Open Public Meetings Act5 (OPMA),
N.J.S.A. 10:4-6 to -21, and Rice v. Union County Regional High
School Board of Education, 155 N.J. Super. 64, 382 A.2d 386
(App. Div. 1977),  "no public body shall hold a meeting unless
adequate notice thereof has been provided to the public," and
that a public body is required to give affected employees
adequate notice of the discussion of personnel matters, so that
they would have the opportunity to make a decision on whether
they desire a public discussion).

charges, the list of exhibits provided to the Council, the

specific findings by the Council, and the ultimate conclusion by

the Council to remove plaintiff as Township Solicitor.  (Docket

No. 31-6.)  The Resolution concluded:

> (1)  Trimble & Armano's representation of Mr. Daly and
> others in the Lawsuit creates a substantial risk that
> Trimble & Armano's ability to provide independent legal
> advice to Council has been compromised.
>
> (2)  Council reasonably believes that that the filing
> of the Lawsuit created substantial doubts as to Trimble &
> Annano's impartiality and independence in rendering legal
> advice to Council which has resulted in a lack of
> confidence and trust in those advices.
>
> (3)  Council has a reasonable belief that the actions
> as aforesaid violate the Rules of Professional Conduct
> governing attorneys in the State of New Jersey.
>
> (4)  As a result of the filing of the Lawsuit by
> Trimble & Armano, Council can no longer reasonably trust
> Trimble & Armano as the Township Attorney and that the
> attorney/client relationship has been irreparably broken
> and fractured due to the lack of trust and confidence as a
> result of the actions of Trimble & Armano as aforesaid.

(Docket No. 31-6.)

Plaintiff claims that his termination was retaliation for

his partner's representation of a political rival, and was a

result of a classic "shake-down" so that another attorney could

be appointed as solicitor and the current Township engineer

would not be replaced.  Plaintiff claims that the hearing "was

little more than a kangaroo court or soviet-style show trial"

because the "non-lawyer governing body" ignored the only

competent evidence presented on the issue of violations of the

RPCs, which was his expert who determined that plaintiff had not committed any ethical missteps.  Plaintiff claims that "the Township's executive department [demonstrated] their willingness to act lawlessly, vigilante style, and wreak havoc on anyone who stood in their way," and as a result the five named defendants "were able to secure their desired appointments without further opposition."   The defendants are Council members, Michele Martin, Angela Donato, Sean Longfellow, and Nicholas Fazzio, Albert Frattali, a member of the Board of Commissioners for the Delaware River Port Authority, and John Rogale, a retired former executive of the DRPA and former Council President of the Township Council.

Plaintiff filed a five-count complaint against the six individual defendants, bringing claims under The Racketeer Influenced and Corrupt Organizations Act ("RICO") and the Hobbs Act, 18 U.S.C. § 1962(a)&(c), 18 U.S.C. § 1962(d), and pursuant to 42 U.S.C. §§ 1983, 1985 & 1988 for various civil rights violations.  Plaintiff also asserts counts for an action in mandamus in lieu of prerogative writ, as well as for intentional interference with contract and abuse of process.

Defendant Roglale has moved to dismiss plaintiff's claims against him, and the other defendants have moved for summary judgment in their favor on plaintiff's claims.  Plaintiff has opposed both motions, and has cross-moved for summary judgment

in his favor on his civil rights claims and for his action in
mandamus in lieu of prerogative writ.

<u>DISCUSSION</u>

**A.   Jurisdiction**

This Court has jurisdiction over plaintiff's federal claims
under 28 U.S.C. §§ 1331 and 1343, and supplemental jurisdiction
over plaintiff's state law claims under 28 U.S.C. § 1367.

**B.   Motion to Dismiss and Summary Judgment Standards**

When considering a motion to dismiss a complaint for
failure to state a claim upon which relief can be granted
pursuant to Federal Rule of Civil Procedure 12(b)(6), a court
must accept all well-pleaded allegations in the complaint as
true and view them in the light most favorable to the plaintiff.
<u>Evancho v. Fisher</u>, 423 F.3d 347, 351 (3d Cir. 2005).  It is well
settled that a pleading is sufficient if it contains "a short
and plain statement of the claim showing that the pleader is
entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Under the
liberal federal pleading rules, it is not necessary to plead
evidence, and it is not necessary to plead all the facts that
serve as a basis for the claim.  <u>Bogosian v. Gulf Oil Corp.</u>, 562
F.2d 434, 446 (3d Cir. 1977).  However, "[a]lthough the Federal
Rules of Civil Procedure do not require a claimant to set forth
an intricately detailed description of the asserted basis for
relief, they do require that the pleadings give defendant fair

8

notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do

9

more than allege the plaintiff's entitlement to relief.  Id.;
see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d
Cir. 2008) (stating that the "Supreme Court's Twombly
formulation of the pleading standard can be summed up thus:
'stating . . . a claim requires a complaint with enough factual
matter (taken as true) to suggest' the required element.  This
'does not impose a probability requirement at the pleading
stage,' but instead 'simply calls for enough facts to raise a
reasonable expectation that discovery will reveal evidence of'
the necessary element").  A court need not credit either "bald
assertions" or "legal conclusions" in a complaint when deciding
a motion to dismiss.  In re Burlington Coat Factory Sec. Litig.,
114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the
burden of showing that no claim has been presented.  Hedges v.
U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages,
Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only
consider the facts alleged in the pleadings, the documents
attached thereto as exhibits, and matters of judicial notice.
S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.,
181 F.3d 410, 426 (3d Cir. 1999).  A court may consider,
however, "an undisputedly authentic document that a defendant
attaches as an exhibit to a motion to dismiss if the plaintiff's
claims are based on the document."  Pension Benefit Guar. Corp.

v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir.

11

2004)(quoting Anderson, 477 U.S. at 255).    Initially, the
moving party has the burden of demonstrating the absence of a
genuine issue of material fact.  Celotex Corp. v. Catrett, 477
U.S. 317, 323 (1986).  Once the moving party has met this
burden, the nonmoving party must identify, by affidavits or
otherwise, specific facts showing that there is a genuine issue
for trial.  Id.  Thus, to withstand a properly supported motion
for summary judgment, the nonmoving party must identify specific
facts and affirmative evidence that contradict those offered by
the moving party.  Anderson, 477 U.S. at 256-57.  A party
opposing summary judgment must do more than just rest upon mere
allegations, general denials, or vague statements.  Saldana v.
Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

     C.   **Analysis**

     The starting point for assessing the viability of
plaintiff's claims is the New Jersey statute that dictates the
powers of the Washington Township Council.  Washington Township
is governed by a mayor-council form of government adopted
pursuant to the Faulkner Act, N.J.S.A. 40:69A-1 to -210 (also
known as the Optional Municipal Charter Law).  Under this form
of government, the municipal council exercises legislative power
and the mayor exercises executive power.  N.J.S.A. 40:69A-36;
N.J.S.A. 40:69A-39.  Relevant to this case, the Faulkner Act
provides that a town council "may . . . [r]emove, by at least

12

two-thirds vote of the whole number of the council, any
municipal officer, other than the mayor or a member of council,
for cause, upon notice and an opportunity to be heard."
N.J.S.A. 40:69A-37(b).

Plaintiff takes issue with how the Council enforced this
provision.  First, plaintiff complains that he did not receive a
fair hearing because the hearing was not presided over by an
impartial arbiter.  Plaintiff also contends that the written
notice of the charges against him concerned the allegations of a
conflict of interest in violation of several RPCs, but at the
hearing the special counsel informed the Council that they could
also focus on whether plaintiff's firm's representation in the
Daly lawsuit constituted a general "appearance of impropriety."
Plaintiff argues that the lack of notice as to the "appearance
of impropriety" charge violates his right to proper notice.

Related to the lack of a neutral hearing officer and proper
notice of all the charges, plaintiff's next complaint concerns
the Council's finding of "cause" to remove him from his
position.  Plaintiff argues that his expert who opined that
plaintiff did not violate any ethic rules was the only credible
evidence presented, as the special counsel did not rebut the
expert's opinions with any comparable evidence.  Because the
only actual evidence in the record showed that plaintiff did not
commit RPC violations, there was no cause to terminate him from

13

his position based on charges that he did commit ethical violations.

The parameters of what constitutes "for cause," "upon notice," and "an opportunity to be heard" to remove a municipal employee under the Faulkner Act are not precisely defined. Plaintiff argues that the claimed deficiencies leading up to and at the hearing violate RICO, the Constitution, and constitute state law torts.  Defendants present numerous arguments and legal bases for the dismissal of plaintiff's claims, including immunity doctrines for the municipal council members,[3] failure to comply with the tort claims act, lack of state action on the part of the private defendants, failure to allege specific actions by each defendant rather than lumping claims against all of them, legally unsupportable claims for RICO and other conspiracy allegations, and a lack of jurisdiction over

---

[3] Because the Court finds that the process provided to plaintiff was constitutionally proper, the issue of the application of the absolute or qualified immunity doctrines need not be reached, other than to note that in the context of public employment, there is a distinction drawn between the elimination of a position and the termination of an individual employee in determining whether absolute immunity applies.  See Baraka v. McGreevey, 481 F.3d 187, 199-200 (3d Cir. 2007) (citations omitted) (explaining that the elimination of a public employment position--as opposed to the firing of a single individual-- constitutes a legislative act that provides absolute immunity, while the firing of a particular employee is a personnel decision that does not involve general policy making, and is therefore an act of an executive or administrative nature that is not entitled to absolute immunity).

plaintiff's request for prerogative writ.  Overall, however, the
Council members argue that plaintiff's termination from his
position of Township Law Department Director complied with the
statutory requirements of the Faulkner Act and comported with
the requirements of constitutionally protected due process.[4]

Plaintiff's claim that he was denied proper due process is
the underpinning of all of his other claims.[5]  The Court will

---

[4] Defendants point out that plaintiff's complaint does not
contain a specific claim for the violation of his due process
rights.  Instead, plaintiff's complaint, in his count for claims
arising under 42 U.S.C. § 1983, states that defendants
"conspired to deprive the plaintiff his constitutionally
protected contract, first amendment and other constitutionally
protected rights." (Amend. Compl. § 55.) Plaintiff's briefs
focus on how he claims his due process rights have been
violated.  Although not as precisely stated as they could be, it
is evident that plaintiff's claims hinge on alleged substantive
and procedural due process violations.

[5] Plaintiff claims that the Council's decision to institute
termination proceedings against him was motivated by political
reasons – namely, that the Mayor and five other executive
employees were threatened with substantial pay decreases if the
Mayor did not appoint a different solicitor hand-picked by the
Council, and that the new solicitor would retain the current
engineering firm, with which defendant Roagle was formerly
employed.  As is discussed below, even accepting as true that
the defendants' actions were motivated by political reasons, in
the context of political appointments and partisan affiliations,
defendants' motivations are irrelevant, so long as plaintiff
received proper due process.  See, e.g., Halle v. Twp. of
Woodbridge, 583 A.2d 1149, 1153 (N.J. Super. Ct. App. Div. 1990)
(explaining that the initial decision of whether to bring civil
charges and remove a political appointee is within the sound
discretion of the municipal council); In re Shain, 457 A.2d 828
(N.J. 1983) (stating that the drafters of the Faulkner Act
plainly contemplated that under a Mayor-Council form of
government, the council would be empowered to undertake the
investigation of departments and the removal of municipal

therefore assess the process provided to plaintiff by the
Council in terminating his employment.  Accepting as true, as
plaintiff claims, that he has a constitutionally protected
property interest in his position as Township Solicitor,[6] the
Supreme Court in Cleveland Bd. of Educ. v. Loudermill, 470 U.S.
532 (1985) set forth the standard in determining what process is
due in pre-termination procedures where a plaintiff has a
property interest in his employment.  The Loudermill Court began
with the long-standing precept that "[a]n essential principle of
due process is that a deprivation of life, liberty, or property
'be preceded by notice and opportunity for hearing appropriate
to the nature of the case.'"  Loudermill, 470 U.S. at 542
(citation omitted).  The Court reiterated the settled rule that
due process "requires 'some kind of a hearing' prior to the

---

officers for cause).

[6] Compare Mele v. Fahy, 579 F. Supp. 1576, 1583 (D.N.J. 1984)
(holding that because a department head is appointed by the
mayor and subject to patronage dismissal, the department head
did not possess either a statutory or contractual property
entitlement to continued employment), and DeSoto v. Smith, 891
A.2d 1241, 1246-47 (N.J. App. Div. 2006) (finding that because
the terms of plaintiff's employment as township solicitor
indicate that her position was terminable at the mayor's
discretion, and plaintiff's termination did not in any way
question her "good name, reputation, honor, or integrity," or
create a detriment to future employment, she had no property or
liberty interest in her position), with McDaniels v. Flick, 59
F.3d 446, 454 (3d Cir. 1995) (finding that under Loudermill, the
plaintiff had a constitutionally protectable property interest
in continued employment as a tenured professor at the college).

discharge of an employee who has a constitutionally protected property interest in his employment." Id. (citation omitted). The Court noted that one essential component of due process was a pre-termination opportunity to respond. Id. The Court instructed that "the pretermination 'hearing,' though necessary, need not be elaborate;" rather, "'[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.'" Id. After balancing the interests of public employees and employers, the Court held that "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 546.

Considering these guideposts for providing a vested employee with due process in his pre-termination proceedings, and crediting all of plaintiff's allegations in his favor, the Court finds that plaintiff was provided with "notice," "an opportunity to be heard," and a "for cause" determination that were all constitutionally proper. Each of plaintiff's challenges to the termination procedure will be addressed in turn.

   1.   *Plaintiff claims that he did not receive a fair hearing because the hearing was not presided over by an impartial arbiter.*

17

As the Supreme Court noted in Louderman, a pre-termination hearing does not need to be elaborate, and the nature of the hearing depends on the circumstances of the matter at hand. Here, the Faulkner Act vests numerous powers and responsibilities to a municipal council, including the power to remove municipal officers.  Stomel v. City of Camden, 927 A.2d 129, 137 (N.J. 2007) (citing N.J.S.A. 40:69A-36(d); N.J.S.A. 40:69A-37).  Even though a hearing to determine whether to remove a municipal officer "involves the exercise of a quasi-judicial function," Galloway v. Council of Clark Twp., Union Cty., 223 A.2d 644, 649 (Ch. Div. 1966), aff'd sub nom., 229 A.2d 279 (N.J. Super. Ct. App. Div. 1967), there are no requirements that the Council conduct the hearing as if it were proceeding as a court of law, DeSoto v. Smith, 891 A.2d 1241, 1246-47 (N.J. Super. Ct. App. Div. 2006) (explaining that a municipal solicitor who had been removed from office under the Faulkner Act and complained about lack of due process "had no right to present witnesses and be heard at a full blown evidentiary hearing").  Indeed, municipalities that have "adopted one of the Faulkner Act plans have been granted wide authority to determine the organization of departments and to control personnel." Casamasino v. City of Jersey City, 730 A.2d 287, 292 (N.J. 1999).  Consequently, plaintiff's claim that his

due process was violated because his hearing was not presided
over by a neutral hearing officer is without merit.

> 2.    *Plaintiff claims that the written notice of the
> charges against him concerned the allegations of a conflict
> of interest in violation of several RPCs, but at the
> hearing the Council focused on whether plaintiff's firm's
> representation in the Daly lawsuit constituted a general
> "appearance of impropriety," which violated his right to
> proper notice.*

The notice sent to plaintiff of the Council's charges
against him was titled, "CONFLICT OF INTEREST - KNOWINGLY
ENGAGING IN ACTION WHICH WAS CONTRARY TO THE INTERESTS OF
CURRENT CLIENTS, DULY ELECTED REPRESENTATIVES OF CLIENTS, AND
INDIVIDUALS WHO ARE NOW REPRESENTATIVES OF CLIENTS."  The notice
elaborated, "The continued legal representation of the Township
of Washington by the firm of Trimble & Armano as
Solicitor/Director of the Department of Law, is in violation of
New Jersey Rule Professional Conduct 1.7, 1.9, 1.10," and "The
firm's continued representation of the Township of Washington,
also causes a fundamental break down in the attorney-client
relationship between the individuals that he has sued personally
and through the litigation against the Washington Township
Democratic Committee since sitting current Council members were
on said Committee."  (Docket No. 31-3.)

Plaintiff argues that because the Council considered the
"appearance of impropriety" standard at the hearing, and this
standard was not articulated in the pre-hearing notice of

19

charges, his right to proper notice was violated.  The Court
finds that this argument is unsupportable for two reasons.

First, plaintiff's contention that he was only notified
about concerns over his violation of several attorney ethics
rules is belied by the content of the notice.  Although the
notice of charges does not specifically use the terminology
"appearance of impropriety," the notice contains language
regarding the fundamental breakdown of the Council's trust in
plaintiff's legal counsel due to his firm's lawsuit against the
very Council members plaintiff was tasked with advising.  It is
evident that the Council was concerned with more than whether
plaintiff violated the precise proscriptions of particular RPCs.

Second, even if the notice only contained the charges
pertaining to specific RPC violations, the Council's additional
focus at the hearing on their concern over an "appearance of
impropriety" is not a violation of plaintiff's right to proper
notice.  Many courts have held that notice of the basis for
termination does not need to be provided in advance of the
hearing to constitute proper due process, and that informing the
employee at the hearing of the charges against him is
sufficient.  See McDaniels v. Flick, 59 F.3d 446, 457 (3d Cir.
1995) (citations omitted) ("McDaniels contends that the notice
given him was insufficient because it was not provided until the
beginning of the pretermination meeting. We have held, however,

20

that advance notice is not required."); Id. ("McDaniels contends that he did not receive adequate notice and explanation of the charges against him because he was not told or given the exact allegations made by Federici. In this regard, it is not disputed that the written summary of Federici's allegations was not given or read to McDaniels before his termination. We have held, however, that pretermination notice of the charges and evidence against an employee need not be in great detail as long as it allows the employee the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges," citing Derstein v. Kansas, 915 F.2d 1410, 1413 (10th Cir. 1990) (fact that employee did not know of all relevant facts and was not given copy of investigation transcript is insignificant), cert. denied, 499 U.S. 937 (1991) (other citations omitted)); Gniotek v. City of Philadelphia, 808 F.2d 241, 244 (3d Cir. 1986), cert. denied, 481 U.S. 1050 (1987) (no advance notice of the pretermination hearing is required; "Notice is sufficient, (1) if it apprises the vulnerable party of the nature of the charges and general evidence against him, and (2) if it is timely under the particular circumstances of the case."); Copeland v. Philadelphia Police Dep't, 840 F.2d 1139, 1142-46 (holding that procedural due process was met where a policeman was told that he had tested positive for illegal drug use, was allowed to respond, and was told that he would be

21

suspended with intent to dismiss, all in the course of a single interview).

Here, plaintiff chose not to attend the hearing afforded to him as part of his due process rights, and thus did not hear the charges lodged against him completely flushed out.  His failure to fully participate in his "opportunity to be heard" cannot serve as a sword to challenge the sufficiency of the notice he was provided.  Accordingly, the Court finds that plaintiff was provided proper notice of the charges against him to satisfy due process.

> 3.  *Plaintiff contends that his expert who opined that plaintiff did not violate any ethic rules was the only credible evidence presented, and because the only actual evidence in the record showed that plaintiff did not commit RPC violations, there was no cause to terminate him from his position based on charges that he did commit ethical violations.*

"Cause," in the context of a general "for cause" provision such as in N.J.S.A. 40:69A-37(b), "is a concept which, like all of the enduring principles of the common law, is certain as a matter of legal import while being at the same time extremely elastic as a matter of specific application."  Golaine v. Cardinale, 361 A.2d 593, 598 (N.J. Ch. Div. 1976), aff'd, 395 A.2d 218 (N.J. Super. App. Div. 1978).  "Cause" essentially means "such cause as is plainly sufficient under the law and sound public policy," and has "reference to a substantial cause touching qualifications appropriate to the office or employment

22

or to its administration." Id. (citations omitted).  "It also
necessarily implies such degree of misconduct or culpability on
the part of the office holder as clearly implicates the public
interest in precluding his continuance in that particular
office." Id.

      "Where the dereliction charged, therefore, is not of such
intrinsically reprehensible character, the determination of
whether a specific act or omission constitutes cause for removal
requires an evaluation of the conduct in terms of its
relationship of the nature of the office itself, and, in that
context, an appraisal of the actual or potential impairment of
the public interest which may be expected to result from the
conduct in question." Id.

      In this case, plaintiff argues that because the only
competent evidence, in the form of plaintiff's witness who is an
expert on legal ethics, determined that plaintiff did not
violate RPC 1.7, 1.9, 1.10 and 1.11, he cannot be terminated
"for cause" on that basis.  The Court finds that plaintiff's
argument could be compelling if the Council terminated his
employment solely on that basis.  The Council, however,
considered the broader implications of the situation, as
described by the court in Golaine, to support the "for cause"
requirement of N.J.S.A. 40:69A-37(b).

      It is important to reiterate that "the Faulkner Act was

created with the intent to confer upon municipalities the
greatest possible power of local self-government consistent with
the Constitution of this State and the applicable law."
Casamasino, 730 A.2d at 292.  Specifically with regard to a
municipality's director of law, "[w]hile it is true that the
attorney serves the public at large, it is also true that the
public has elected the officials who retain their counsel.
Surely the public can presume that their chosen officials, or
the majority of those officials at least, should have freedom to
select the professionals with whom they will work in harmony to
provide the good government the citizens believe they will
obtain through their vote.  The will of the electorate may be
frustrated by not giving those they have elected the right to
fashion their team to carry out the mandate inherent in their
election.  Furthermore, requiring the majority of the governing
body to receive the advice of counsel in whom it does not
exhibit trust and confidence hardly engenders public respect,
not to mention organizational stability and efficiency."
Hiering v. Twp. of Jackson, 589 A.2d 1373, 1377 (N.J. Ch. Div.
1990) aff'd, 589 A.2d 1357 (N.J. Super. Ct. App. Div. 1991).

     In this case, the Council found exactly what concerned the
court in Hiering:  (1) "Trimble & Armano's representation of Mr.
Daly and others in the Lawsuit creates a substantial risk that
Trimble & Armano's ability to provide independent legal advice

24

to Council has been compromised," (2) "that the filing of the Lawsuit created substantial doubts as to Trimble & Annano's impartiality and independence in rendering legal advice to Council which has resulted in a lack of confidence and trust in those advices," and (3) that the "Council can no longer reasonably trust Trimble & Armano as the Township Attorney and that the attorney/client relationship has been irreparably broken and fractured due to the lack of trust and confidence as a result of the actions of Trimble & Armano." (Docket No. 31-6.)

Even accepting that plaintiff had not violated any of the ethics rules governing the conduct of attorneys,[7] the Council

---

[7] Even though the Council found that it had "a reasonable belief that the actions as aforesaid violate the Rules of Professional Conduct governing attorneys in the State of New Jersey," they did so while being advised by the special counsel that the members did not have to actually find that there was a violation of the RPCs. (Docket No. 43 at 19.) Moreover, that finding must be considered in context with the Council's determination that the attorney/client relationship had been irreparably broken and fractured due to the lack of trust and confidence resulting from plaintiff's firm's representation of the plaintiff in the Daly matter. Plaintiff is correct that a group of laymen cannot determine whether an attorney has violated the Rules of Professional Conduct. Indeed, it is only for the New Jersey Supreme Court, through the Disciplinary Review Board and Office of Attorney Ethics, that can determine whether a lawyer has committed unethical conduct and is subject to discipline. See N.J. Const. art. VI, § 2, ¶ 3 ("The Supreme Court shall make rules governing the administration of all courts in the State and, subject to the law, the practice and procedure in all such courts. The Supreme Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted."). It is important to note that there is no

articulated its grave concern over trusting the legal counsel of
its solicitor whose law firm sued, on behalf of a political
rival, several members of the Council.  Given that plaintiff's
position was a partisan political appointment, terminable at the
discretionary removal by the Mayor or by two-thirds of Council,
DeSoto, 891 A.2d at 1246; N.J.S.A. 40:69A-37(b), and that the
elected officials should have the "freedom to select the
professionals with whom they will work in harmony," the
Council's lack of trust and confidence in plaintiff's services
as Township Solicitor establishes sufficient cause to remove him
from his position.  Therefore, plaintiff's claim that the
removal procedures were constitutionally infirm because he was
not terminated "for cause" fails as a matter of law.

Having found that plaintiff's termination as the Township
Solicitor was effected through constitutionally sufficient due
process and in compliance with N.J.S.A. 40:69A-37(b), the Court
further finds that all of plaintiff's other claims fail as a
matter of law.  Plaintiff claims that his removal was a
conspiracy to ensure a partisan appointment of a different
Township solicitor and the renewed appointment of the Township
engineer.  Even when accepting as true plaintiff's conspiracy

---

indication in the record that any disciplinary charges have been
brought against plaintiff by the DRB or OAE for the conduct at
issue in this case.

claims, these political motivations do not override the
constitutionally and statutorily proper termination process
provided to plaintiff.  Accordingly, plaintiff's claims for RICO
and Hobbs Act violations, along with claims for abuse of process
and intentional interference with contract, cannot be
maintained.[8]  Similarly, plaintiff's action in mandamus in lieu
of prerogative writ, even if the Court had jurisdiction to hear
such an action, is also unsustainable.[9]

---

[8] Plaintiff asserts a claim for First Amendment violations, but
it is unclear how he claims his First Amendment rights were
violated.  If Plaintiff is contending that he was terminated
because of his firm's alignment with a political rival, such a
claim is not maintainable.  See, e.g., Ness v. Marshall, 660
F.2d 517 (3d Cir. 1981) (where the former city solicitor of
York, Pennsylvania and two assistants alleged that the new
mayor, a Democrat, had dismissed them because they were
Republicans and in so doing had violated their First Amendment
rights, the Third Circuit holding that as a matter of law the
plaintiffs occupied policy-making roles and thus could be
subject to patronage dismissal).

[9] From the history and plain language of the provisions allowing
for a plaintiff to assert an action in lieu of prerogative writ,
along with the tenants of various federal comity doctrines, it
is highly questionable that a plaintiff can maintain action in
mandamus in lieu of prerogative writ in this Court to compel a
municipality's town council to act in a certain way.  See Vas v.
Roberts, 14 A.3d 766, 771 (N.J. Super. App. Div. 2011) (citing
N.J. Ct. Rule 2:2-3(a)(2)) (explaining the history of an action
in lieu of prerogative writ, which is codified by the New Jersey
Supreme Court's adoption of Rule 2:2-3(a)(2), and which mandates
the exclusive allocation to the Appellate Division review of
both "final decisions or actions of any state administrative
agency or officer, and ... the validity of any rule promulgated
by such agency or officer"); Johnson v. De Grandy, 512 U.S. 997,
1005-06 (1994) (explaining that Rooker/Feldman abstention
doctrine bars a party losing in state court from seeking what in
substance would be appellate review of the state judgment in a

## CONCLUSION

This case presents the collision of partisan appointments and political wrangling with constitutional due process rights. Even accepting as true the full extent of plaintiff's allegations regarding the political motivations of the Township Council, plaintiff received the constitutionally proper process he was due as directed by the Supreme Court: he received "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Loudermill, 470 U.S. at 542. Moreover, as required by the Faulkner Act, N.J.S.A. 40:69A-37(b), plaintiff received a properly supported "for cause" determination. These constitutionally and statutorily proper procedures cannot serve as a basis for other claims. Accordingly, defendants are entitled to judgment in their favor on all of plaintiff's claims against them.

An appropriate Order will be entered.

Date:  January 15, 2016           s/ Noel L. Hillman
At Camden, New Jersey             NOEL L. HILLMAN, U.S.D.J.

---

United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights).